IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

STEWART ABRAMSON, individually and on behalf of a
Class of all persons and entities similarly situated,

       Plaintiff,

vs.                                                              Case No. 15-cv-61373

1 GLOBAL CAPITAL LLC, d/b/a 1st
GLOBAL CAPITAL, LLC d/b/a FIRST
GLOBAL FUNDING, a Florida limited
liability company, and
LEAD RESEARCH GROUP, LLC

       Defendants.

## FIRST AMENDED CLASS ACTION COMPLAINT

### Preliminary Statement

1.     Plaintiff Stewart Abramson brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.     Mr. Abramson alleges that Defendant 1 Global Capital LLC ("1st Global" or "Defendant"), through third parties it hired (including but not limited to co-defendant Lead Research Group, LLC) initiated prerecorded telemarketing calls to his residential telephone line and to the residential telephone lines of other putative class members without prior express written consent from Mr. Abramson or the other class members.

3.     Because the call to Mr. Abramson was transmitted using technology capable of generating thousands of similar calls per day, Mr. Abramson brings this action on behalf of a proposed nationwide class of other persons who received illegal telephone calls from 1st Global.

4.     A class action is the best means of obtaining redress for the Defendant's illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

5.     Plaintiff Stewart Abramson resides in Pennsylvania.

6.     Defendant 1 Global Capital LLC is a Florida limited liability company that has its principal office in this District in Hollywood, FL.

7.     Lead Research Group, LLC is a limited liability corporation headquartered at 3857 Birch Street, # 410, Newport Beach, CA 92660 ("Lead Research Group").

### Jurisdiction & Venue

8.     The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

9.     Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because the defendant 1st Global resides in this judicial district, and a substantial part of the events and omissions giving rise to the claim occurred in this District, including but not limited to entering into the contract for the placement of the solicitation robocalls that are at issue in this action.

10.    Defendants are subject to personal jurisdiction in this District as 1st Global resides in the District and Lead Research Group purposefully directed its activities towards Florida by virtue of negotiating and performing its contract to place telemarketing calls on behalf of 1st Global, which is based in Florida.

### TCPA Background

11.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing

. . . can be an intrusive invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

12. Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
>
> . . . .
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* § 2(10) and (12); *see also Mims*, 132 S. Ct. at 745.

13. The TCPA prohibits persons from initiating any telephone call to a residential telephone line using a prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order of the FCC. 47 U.S.C. § 227(b)(1)(B); *see also* 47 C.F.R. § 64.1200(a)(2).

14. A telemarketer may use a pre-recorded message to call a residential telephone number; however, the telemarketer must have the call recipient's prior express written consent.

15. Prior express written consent requires an agreement, in writing, bearing the signature of the person called that (a) clearly authorizes the caller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an artificial or prerecorded voice, and (b) lists the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. *See* 47 C.F.R. § 64.1200(f)(8).

**Factual Allegations**

16.     1st Global attempts to provide businesses with capital investments and advertise that "we say 'yes' when banks say 'no'". *See* http://www.1stglobalcapital.com/about (Last visited on June 30, 2015).

17.     1st Global uses telemarketing to obtain new clients.

18.     1st Global engages in telemarketing, by hiring third parties to physically dial calls, nationwide in its efforts to obtain new clients.

19.     On June 19, 2015, 1st Global initiated a prerecorded telemarketing call through its agent Lead Research Group offering the loan services of 1st Global to the Plaintiff on a residential telephone number, 412-361-XXXX. Lead Research Group, having physically placed a robocall to Plaintiff as well as members of the putative class, is also liable for the violation of the TCPA.

20.     The Caller ID Number for the call was 253-245-2251.

21.     The Plaintiff answered the call, and there was no one on the other end of the line.

22.     Instead a pre-recorded voice came on the line stating that the Plaintiff's business had been preapproved for a small business loan, and to press "1" for more information

23.     There is no business at the number called by the Defendants and the Plaintiff has not applied for any business loan.

24.     After the Plaintiff pressed "1" and spoke with a woman who asked if I was interested in a business loan.  In order to find out who was responsible for the illegal prerecorded solicitation call to my residential line, Mr. Abramson identified himself and said that the name of his business was "Baskets to Go" (a fictitious business).  She then merged the call to join a man who identified himself as "Will Pena" who stated that he was with 1st Global Capital.

25.     Mr. Pena attempted to sell the Plaintiff the 1st Global's loan services, and sent him an email with an attached application to apply for a loan as well as information about 1st Global.

26.     1st Global did not have the Plaintiff's prior express written consent to receive telemarketing calls.

27.     In fact, to verify this, the Plaintiff sent 1st Global a written communication about the pre-recorded telemarketing call asking the 1st Global to provide any proof it had that he consented to the call.

28.     1st Global did not provide any proof, or otherwise allege that they had consent to make the call.

### 1st Global's Vicarious Liability for the Calls at Issue

29.     Under the TCPA, a seller of a product or service may be vicariously liable for a third-party marketer's violations of Section 227(b), even if the seller did not physically dial the illegal call, and even if the seller did not directly control the marketer who did.  *In re Joint Pet. filed by Dish Network*, *LLC*, FCC 13-54 ¶ 37, 2013 WL 193449 (May 9, 2013) ("FCC Ruling").

30.     A seller is liable under Section 227(b) when it has authorized a telemarketer to market its goods or services. *Id.* ¶ 47.

31.     The May 2013 FCC Ruling further held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* ¶ 34.

32.     Vicarious liability can also arise under the theory of "ratification" where the seller ratifies the illegal conduct of a third party by knowingly accepting the benefits of such conduct. *See* FCC Ruling at ¶¶ 28, 34, 46.

33. The United States Supreme Court has specifically provided for a rule of statutory construction in which congressional tort actions implicitly include the doctrine of vicarious liability. *See Meyer v. Holley,* 537 U.S. 280, 285-87 (2003) ("[W]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules.").

34. In *Meyer*, the Supreme Court applied the doctrine of vicarious liability to the Fair Housing Act, despite Congress's silence on the subject. *Id.* Under this rule, therefore, violators of the law like 1st Global cannot reap the benefits of their illegal behavior by delegating the actual conduct to third parties, and then assert that only the third parties may be held responsible for the misconduct.

35. In its initial disclosure Fed. R. Civ. P. 26.1 disclosure, 1st Global alleged that Lead Research Group of Newport Beach, California made the robocall to Plaintiff.

36. 1st Global contracted with Lead Research Group to conduct a lead generation campaign, in which was paid for all leads transferred to 1st Global's Call Center. The campaign was operated by Lead Research Group who physically placed the pre-recorded calls, with the knowledge and consent of the 1st Global.

37. Lead Research Group prequalified call recipients who pressed "1" in response to the pre-recorded message as loan candidates according to qualifications set by 1st Global. This interim control over Lead Research Group's calling further supports a finding of vicarious liability. As the FCC held:

> [W]e see no reason that a seller should not be liable under [sections 227(b) and 227(c) of the TCPA] for calls made by a third party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised.

FCC Ruling at ¶47.

38. The FCC's view of the availability of vicarious liability under the TCPA has been supported by Court ruling from this District on the topic. *See Shamblin v. Obama for America, et al.* 2015 U.S. Dist. LEXIS 50989 **14-19 (citing allegations of failure to prevent illegal robo-calling, knowledge of robo-calling and specifically relying on the FCC Advisory cited by 1st Global in support of the legality of its calling as evidence supporting an imposition of vicarious liability under the TCPA).

39. Similarly, a District Court in West Virginia twice concluded that when a third-party telemarketer is allowed to hold itself out as an "authorized dealer" of a seller's product, "that fact alone could lead a reasonable finder of fact to conclude that [the seller] cloaked the [third-party telemarketer] with the apparent authority to act on [its] behalf." *See Mey v. Monitronics Intern., Inc.*, 959 F.Supp.2d 927, 932 (N.D. W. Va. 2013) (Keeley, J.); *In re Monitronics Intern., Inc., Telephone Consumer Protection Act Litigation*, No. 13-2493, 2015 WL 1964951, *8 (N. D. W. Va. April 30, 2015) (Keeley, J.).[1] Courts in other circuits have reached the same conclusion. *See, e.g., Lushe v. Verengo Inc.*, No. 13-7632, 2014 WL 5794627, *7 (C.D. Cal. Oct. 22, 2014) (jury could conclude that authorizing telemarketer to use Defendant's name creates agency by apparent authority).

40. 1st Global was given a login by Lead Research Group, which allowed 1st Global to listen to call recordings on the pre-qualification portion of Lead Research Group's calls, a capability that 1st Global exercised.

---

[1] Just before the FCC Ruling was issued, Judge Copenhaver reached a similar result in *Mey v. Honeywell*, a TCPA class action. *See* No. 12-1721, 2013 WL 1337295 (S.D. W. Va. Mar. 29, 2013). In that case, defendant Honeywell moved to dismiss, arguing that it could not be held responsible for unlawful calls made by third-parties. As in *Mey v. Monitronics*, Judge Copenhaver concluded that the existence of an "authorized dealer" relationship was sufficient to state a plausible claim for vicarious liability, and denied Honeywell's motion. *See id* at *6.

41. In addition, Lead Research Group used its ability to listen to the recordings of 1st Global after transfer from Lead Research Group to 1st Global.

42. 1st Global received complaints about calls placed by Lead Research Group, including multiple complaints in the first few days of the campaign, prior to the call to the Plaintiff.

43. 1st Global was aware that Lead Research Group was conducting its telemarketing via prerecorded messages. On July 20, 2015, Marc Lalague sent Steve Kaye an email with the Re line: "LRG Response Re: Call Recording is done." *See* DFT00072.

44. That 1st Global was both aware of and indifferent to the fact of Lead Research Group's use of pre-recorded messages is evident from the fact that even after Stewart Abramson complained directly to 1st Global about having received a pre-recorded message promoting 1st Global's loans, 1st Global nonetheless continued to communicate with Lead Research Group about continuing the telemarketing campaign. *See* DFT00095.

45. 1st Global's response to Mr. Abramson was not that it was unaware that prerecorded calls were being placed, but rather that it believed the TCPA was ambiguous as to prerecorded calls and provided an inapplicable FCC Advisory about Political Robocalls, which are treated entirely differently from *commercial* solicitations such as those placed by 1st Global through its agents, as Mr. Abramson pointed out in his reply email. *See* DFT00205-212.

46. Similarly, 1st Global contracted with Powers Marketing Group to conduct a telemarketing campaign, negotiating over "RAW voice broadcast calls for only $3 each." *See* DFT00115.

47. As was the case with Lead Research Group, 1st Global controlled Powers Marketing Group, directing them on prequalification requirements for the campaigns. *See* DFT00103.

48. Under the facts pled herein, and through the development of additional facts through discovery, 1st Global is vicariously liable for the actions of Lead Research Group and Powers Marketing Group and other similarly situated agents placing calls on behalf of 1st Global in violation of the TCPA, 47 U.S.C. § 227(b)(1)(B)**.**

**In the Alternative, 1st Global Should Be Held Directly Liable Under 47 U.S.C. § 227(b)(1)(B), as it "Initiated" the Calls to Mr. Abramson and members of the putative class through its Agents.**

49. The definition of the term "initiate" as it appears in the TCPA's robocall prohibition found at 47 U.S.C. 227 § (b)(1)(B), is <u>not</u> limited to the individual or entity who physically dials the robocall. The definition of "initiate" is "to cause or facilitate the beginning of; set going." *Merriam-Webster Dictionary,* www.merriam-webster.com).

50. Over the course of the twenty years following the TCPA's enactment, the FCC repeatedly has made clear that the TCPA's broad restrictions on various forms of telephone solicitations cannot be evaded simply by using third parties to physically transmit illegal calls. In this regard, the FCC has warned:

> We take this opportunity to reiterate that a company on whose behalf a ***telephone solicitation*** is made bears the responsibility for ***any*** violation of our telemarketing rules and calls placed by a third party on behalf of that company ***are treated as if the company itself placed the call.***

*See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling*, CG Docket No. 02-278, 20 F.C.C.R. 13664 at ¶7 (August 17, 2005) (emphasis added). *See also In the Matter of Rules and Regulations*

9

*Implementing the Telephone Consumer Protection Act of 1991, Memorandum Opinion and Order,* 10 F.C.C.R. 12391 at ¶13 (1995) ("our rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations")

51. Limiting "initiation" to entities that physically place robocalls was directly rejected by two decisions from the District of Illinois.

52. First, in *United States v. Dish Network, LLC* ("*US v. Dish*"), 667 F. Supp. 2d 952 (C.D. Ill. 2009), *certification of interlocutory appeal denied*, No. 09-3073, 2010 WL 376774, 2010 U.S. Dist. LEXIS 8957 (C.D. Ill. Feb. 4, 2010), the Federal Trade Commission initiated litigation against DISH for telemarketing via robocall and to consumers whose numbers were listed on the Do Not Call Registry. Like 1st Global here, DISH argued that the calls were made by "independent contractors" that it did not control. The Court rejected this argument recognizing that no formal agency relationship was necessary to impose TCPA liability on Dish and that liability would extend to Dish if its representatives "acted as Dish Network's representatives, or for the benefit of Dish Network." 667 F. Supp.2d at 963.

53. Second, Judge Bucklo rejected an identical argument made by a defendant claiming it was not responsible for robocalls sent to consumers by third parties. *See Desai v. ADT Sec. Servs., Inc.*, 2011 WL 2837435 at *1 (N.D. Ill. July 18, 2011) ("The term 'initiate' is broad enough to include cases where . . . a party has encouraged or otherwise prompted its authorized dealers to make calls on its behalf.").

54. Indeed, many courts have recognized that the TCPA is a strict liability statute. *See CE Design, Ltd. v. Prism Bus. Media, Inc.*, 2009 WL 2496568 at *3 (N.D.Ill. Aug. 12, 2009) (TCPA is a strict liability statute); *Park University Enterprises, Inc. v. American Cas. Co. of Reading, PA*, 314 F. Supp. 2d 1094, 1103 (D. Kan. 2004), *aff'd* 442 F.2d 1239 (10th Cir. 2006)

(TCPA is essentially a strict liability statute); *Penzer Transp. Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008); *Park Univ. Enters. Inc. v. Am. Cas. Co. of Reading Pa.*, 314 F.Supp.2d 1094, 1103 (D.Kan. 2004); *Accounting Outsourcing, LLC, v. Verizon Wireless Personal Communications, L.P.*, 329 F. Supp. 2d 789, 818 (M.D. La. 2004) ("the TCPA ... impose[s] strict liability for [its] civil damages provisions")

55. Any cramped reading of the term "initiate" would also fail to effectuate the TCPA's intent to protect consumers from intrusive and abusive telemarketing practices and should be rejected. Under a definition of "initiate" limited to physically dialing the illegal robocalls, 1st Global could order, authorize, design, implement, ratify and profit greatly from an illegal telemarketing campaign, and avoid all TCPA liability merely by hiring a third party to dial the illegal call.

56. Because the TCPA is a remedial statute, reading "initiate" as requiring that the call be physically dialed by the entity that benefits from the call is contrary to the rule of statutory construction that a remedial statute must be construed to benefit consumers. *See, e.g., Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013).

57. As is set forth above, 1st Global hired its agents to conduct telemarketing campaigns. By authorizing its agents to tele-market on its behalf, using 1st Global's tradename, and by compensating the agents for leads generated by illegal telemarketing, 1st Global facilitated the beginning or and/or set into motion the illegal robocall telemarketing campaign at issue.

## Class Action Allegations

58. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

59. The class of persons Plaintiff proposes to represent include:

All persons within the United States whom Defendant, directly or through their agents, initiated a telephone call with a pre-recorded message to a residential line within four years before this Complaint was filed through the date of class certification

60. Excluded from the class are Defendants, any entities in which Defendants have a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

61. The proposed class members are identifiable through phone records and phone number databases.

62. The potential class members number in the thousands, at least. Individual joinder of these persons is impracticable.

63. Plaintiff is a member of the class, including both subclasses.

64. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a. Whether the Defendants used a pre-recorded message to send telemarketing calls;

    b. Whether the Defendants placed telemarketing calls without obtaining the recipients' valid prior express written consent;

    c. Whether the Defendants' violations of the TCPA were negligent, willful, or knowing; and

    d. Whether the Plaintiff and the class members are entitled to statutory damages as a result of the Defendants' actions.

65. Plaintiff's claims are based on the same facts and legal theories, and therefore are typical of the claims of class members.

66. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

67. The actions of Defendants are generally applicable to the class as a whole and to Plaintiff.

68. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

69. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

70. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

### Legal Claims

### Count One:
### Violation of the TCPA, 47 U.S.C. § 227(b) and 47 C.F.R. § 64.1200(a)

71. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

72. The Defendants violated the TCPA by (a) initiating a telephone call using a prerecorded voice to Plaintiff's telephone number, or (b) by the fact that others caused the initiation of those calls on its behalf.  *See* 47 C.F.R. 64.1200(a)(1)(iii); 47 U.S.C. § 227(b)(1).

73. The Defendants' violations were negligent and/or willful and knowing.

## Count Two:
## Injunctive Relief

74. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

75. The TCPA authorizes injunctive relief to prevent further violations of the TCPA.

76. The Plaintiff respectfully petitions this Court to order the Defendants, and their employees, agents and independent contractors, to immediately cease engaging in unsolicited telemarketing in violation of the TCPA.

## Relief Sought

For himself and all class members, Plaintiff requests the following relief:

1. That Defendants be restrained from engaging in future telemarketing in violation of the TCPA.

2. That Defendants, their agents, and anyone acting on its behalf, be immediately restrained from altering, deleting, or destroying any documents or records that could be used to identify class members.

3. That the Court certify the proposed class under Rule 23 of the Federal Rules of Civil Procedure.

4. That the Plaintiff and all class members be awarded statutory damages of $500 for each negligent violation of the TCPA, and $1,500 for each knowing violation.

5. That the Plaintiff and all class members be granted other relief as is just and equitable under the circumstances.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Plaintiff Stewart Abramson,
By his Counsel,

*/s/ Scott D. Owens*
Scott D. Owens
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
scott@scottdowens.com

Anthony Paronich
Broderick Law, P.C.
99 High St., Suite 304
Boston, MA  02110
(508) 221-1510
anthony@broderick-law.com
*Admitted Pro Hac Vice*

Date:   October 2, 2015

**CERTIFICATE OF ECF SERVICE**

**I HEREBY CERTIFY** that on October 2, 2015, I filed the foregoing document via the Court's ECF System which will effectuate service upon all counsel of record.

*/s/ Scott D. Owens*
Scott D. Owens